UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joshua Jon Vlaminck,                                  Civil No. 10-4910 (MJD/FLN)

          Plaintiff,

v.                                                    **REPORT AND
                                                      RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

John H. Burns, for Plaintiff.
Lonnie F. Bryan, Assistant United States Attorney, for Defendant.

_____

Plaintiff Joshua Jon Vlaminck seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for disability insurance benefits.  The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  This Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g).  The parties have submitted cross-motions for summary judgment. (ECF Nos. 10 and 16.)  For the reasons which follow, it is this Court's recommendation that the Commissioner's decision must be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE.**

## I. INTRODUCTION

Plaintiff Joshua Vlaminck applied for disability insurance benefits ("DIB") on September 20, 2006, alleging disability as of August 15, 2006. (ECF No. 9, Administrative Record [hereinafter "R."] 118-123.)  The Social Security Administration ("SSA") denied Mr. Vlaminck's application for DIB on January 16, 2007 and, upon reconsideration, on May 14, 2007. (R. 78-80, 86-88.)

A hearing was held on July 22, 2009 before Administrative Law Judge ("ALJ") Roger W. Thomas. (R. 17-73.) The ALJ ultimately determined that Mr. Vlaminck was not disabled at any point from his alleged onset date of August 15, 2006 through the date of the ALJ's decision on October 30, 2009. (R. 16.) The ALJ found that Mr. Vlaminck had worked at a substantial gainful level from June 2008 through the time of the decision, and was not therefore disabled during that period. (R. 11.) Mr. Vlaminck did not perform substantial gainful activity for the period of August 15, 2006 through June 2008, therefore the ALJ proceeded to consider whether Mr. Vlaminck was disabled during that period. (R. 11.) The ALJ determined that Mr. Vlaminck was disabled during that period, but that there was also medical evidence of substance use disorders. (R. 12.) The ALJ determined that the substance abuse was a contributing factor material to the determination of disability, because if Mr. Vlaminck stopped the substance abuse he would have the residual functional capacity to perform past relevant work. The ALJ therefore determined that Mr. Vlaminck was not disabled within the meaning of the Social Security Act. (R. 16.)

The Appeals Council denied Mr. Vlaminck's request for review of the ALJ's decision on October 21, 2010, rendering the ALJ's decision final for purposes of judicial review. (R. 1-4); *see* 20 C.F.R. § 404.981. On December 17, 2010, Mr. Vlaminck commenced this civil action for review. (ECF No. 1.) Both parties then filed cross-motions for summary judgment. (ECF Nos. 10 and 16.)

## II. STATEMENT OF FACTS

### A. Background

Mr. Vlaminck was 21 years old when he applied for DIB in August of 2006. (R. 21.) At the time of the hearing Mr. Vlaminck had completed a two year Associates Arts degree and had past relevant work experience as a car wash attendant and a store clerk. (R. 42, 231.) Mr. Vlaminck's

impairments include: a gambling addiction, a history of a substance addiction disorder, schizophrenia, depression in partial remission, and anxiety in partial remission. (R. 12.)

### B.    Medical Evidence - Mental Impairments

On August 8, 2006, Mr. Vlaminck was seen by Psychiatrist Dr. David Kerski, M.D., at Woodland Center.  Mr. Vlaminck reported that he was experiencing both auditory and visual hallucinations, hearing voices and seeing "weird things" and "purple lights," and that he felt people were communicating with him telepathically.  (Tr. 285.)  Mr. Vlaminck reported that he had previously been prescribed Zyprexa and Paxil to treat psychotic and depressive symptoms, but that he discontinued the use of medication "four to six months ago" because he felt he was stable.  *Id.* Mr. Vlaminck reported that the voices had returned two months ago.  *Id.*  Mr. Vlaminck also reported a history of chemical dependency issues, including two DUI's at ages 17 and 20, and two chemical dependency treatments.  (R. 286.)  Mr. Vlaminck reported last use of drugs three weeks prior, when he smoked marijuana and consumed 12 beers and some vodka.  (R. 286.)

Dr. Kerski diagnosed Mr. Vlaminck with Schizophrenia and recommended treatment with Zyprexa and Paxil, which had been effective in the past.  (Tr. 288.)  Dr. Kerski rated Mr. Vlaminck with a Global Assessment of Functioning (GAF) score of 40-50 for the past year.[1]  *Id.*  Dr. Kerski noted that Mr. Vlaminck was entering the Partial Hospital Outpatient program, and noted that without that program and the support of his family, Mr. Vlaminck would need to be in the Crisis Unit or hospitalized.  *Id.* Dr. Kerski noted that Mr. Vlaminck had previously worked as a cashier,

---

[1]The GAF scale reflects the "clinician's judgment" about an individual's psychological functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A score of 41-50 indicates that the individual has serious symptoms or a serious impairment in social, occupational, or school functioning.  *Id.* at 33.

and stated that he "probably . . . could function at a higher level if he was feeling better." *Id.* Dr. Kerski stated the Mr. Vlaminck was "alert and cooperative" throughout the examination, and observed that he was obviously quite smart, having completed two years of post secondary education. (Tr. 287.)

On August 28, 2006, Mr. Vlaminck entered the intensive residential program at Woodland Center for help with his mental illness. On October 9, 2006, Mr. Vlaminck saw Psychiatrist Dr. William Meller through Woodland Center. (Tr. 341.) Dr. Meller noted that Mr. Vlaminck was still having chronic auditory hallucinations, hearing voices daily, but he reported "they are not really bothering him." *Id.* Dr. Meller noted that his mood was neutral, but occasionally very depressed. (Tr. 341.) Dr. Meller saw Mr. Vlaminck again on October 30, 2006, and reported that he was having very few psychotic symptoms. (Tr. 338.) Dr. Meller continued Mr. Vlaminck on Paxil and Zyprexa. *Id.* Mr. Vlaminck was discharged from Woodland Center in October of 2006. (Tr. 330.)

In December 2006, Mr. Vlaminck underwent a mental status examination with Patrick J. Carroll, M.A., Licensed Psychologist. Mr. Carroll diagnosed Mr. Vlaminck with schizoaffective disorder, polysubstance dependency in remission, rule out schizophrenia, and pathological gambling. (Tr. 301-302.) Although Mr. Vlaminck complained of hallucinations, Mr. Carroll noted that they did not appear to impact his overall functioning during the interview. (Tr. 301.) Mr. Carroll opined that Mr. Vlaminck had the capacity to understand and follow instructions that would be part of an entry-level work position, but felt "he might have some inability to maintain attention and concentration and to persist in carrying out tasks." (Tr. 302.) Mr. Carroll opined that Mr. Vlaminck would "probably be able to interact with fellow workers." *Id.*

On January 8, 2007, Mr. Vlaminck reported to Dr. Meller that he was still experiencing some

4

auditory hallucinations, but that with his medication he was able to ignore them and was under "pretty good control." (R. 335.)

In March 2007, Mr. Vlaminck informed his counselor at Woodland Centers that he had recently received his third DWI and admitted that he was an alcoholic. (R. 334.) On March 15, 2007, Plaintiff underwent an alcohol and chemical use evaluation at St. Cloud Hospital. (R. 348.) Plaintiff reported that he had been using marijuana beginning at age 17, and that he was currently using marijuana daily. (R. 348.) He also reported that prior to his DUI on February 26, 2007 he had been consuming alcohol on a daily basis, consuming eight beers per day. *Id.* He reported previous use of methamphetamine on a daily basis for a two year period, but reported he had not used methamphetamine since 2005. *Id.* Theresa M. Rock, Licensed Alcohol and Drug Counselor, recommended that Mr. Vlaminck begin out-patient drug and alcohol treatment, while living in a sober living home. (R. 349.)

On April 9, 2007, Dr. Meller reported that he had decreased Mr. Vlaminck's Zyprexa dosage from 30 mg to 25 mg, tapered his Paxil, and added Lexapro, because Mr. Vlaminck had been feeling oversedated on the previous dosages. (R. 392.) Dr. Meller noted that Mr. Vlaminck denied having any psychotic symptoms and that his insight and judgment were improving. (R. 392.) Mr. Vlaminck also reported that one of the major reasons for his exhaustion was that he stays up gambling all night then sleeps during the day. (R. 392.)

In May 2007, state agency psychologist Dr. Ray M. Conroe, Ph.D., completed psychiatric review technique and mental residual functional capacity forms. (R. 367-84.) Dr. Conroe considered Mr. Vlaminck's medical records and his diagnoses of schizophrenia and substance addiction disorder, and found that Mr. Vlaminck had mild limitations in activities of daily living and

moderate limitations in social functioning and maintaining concentration, persistence, or pace.  (R. 377.)  Dr. Conroe stated that it was unclear whether Mr. Vlaminck's psychotic symptoms were entirely substance-induced, but stated that his symptoms were significantly exacerbated by drug and alcohol use.  (R. 383.)  Dr. Conroe opined that Mr. Vlaminck had sufficient mental capacity to: (1) concentrate on, understand, remember and carry out routine, repetitive 3 to 4 step instructions; (2) handle brief and superficial contact with co-workers and the public; and (3) handle the stresses of a reasonably supportive supervisory style in a routine, repetitive work setting.  (R. 384.)

On June 11, 2007, Dr. Meller noted that Mr. Vlaminck had a relapse of chemical dependency and spent time in a chemical dependency treatment center in St. Cloud.  (R. 393.)  Dr. Meller noted that the Zyprexa dosage remained the same and Mr. Vlaminck was reporting no hallucinations.  (R. 393.)  On July 30, 2007, Dr. Meller reduced Mr. Vlaminck's dosage of Zyprexa down to 20 mg, in response to Mr. Vlaminck's complaints that he had trouble waking up, trouble coming up with his own thoughts, and felt he was in a daze.  (R. 395.)  Dr. Meller noted these could be medication side effects or could be secondary to a psychotic process.  (R. 395.)

In July 2008, Mr. Vlaminck began counseling for his gambling addiction with C. William Walker, PhD, pursuant to a court order.  (R. 468.)  Dr. Walker noted that Mr. Vlaminck suffered from the clinical disorders of pathological gambling, alcohol abuse, cannabis abuse, schizophrenia, and depression.  (R. 425.)

On October 1, 2007, Dr. Meller completed a psychological evaluation.  He noted that Mr. Vlaminck found Zyprexa to cause a significant amount of sedation, and for that reason had been reduced to a dosage of 17.5 mg.  (R. 390.)  Dr. Meller noted that at a dosage below 20 mg Mr. Vlaminck began to have intermittent psychosis, and that he was currently reporting auditory and

visual hallucinations two to three times per month. (R. 390.) Dr. Meller expressed concern that lowering the dosage below 17.5 mg might make the psychosis unacceptable. *Id.* Dr. Meller noted that Mr. Vlaminck had attended two classes at a local college, with significant accommodation for his disability. *Id.* Dr. Meller assessed him with a GAF of 40, and noted, "It does not appear likely that this patient will be able to pursue a financially viable occupation any time in the foreseeable future." (R. 391.)

In March 2008, Dr. Meller noted that Mr. Vlaminck was stable, that his mood was good and his content of thought was "currently without hallucinations, delusions, or other first-rank symptoms." (R. 400.) Mr. Vlaminck reported occasional auditory hallucinations, about once a week but that was not a major concern. (R. 400.) Mr. Vlaminck reported working twenty hours per week as a cashier. *Id.* Mr. Vlaminck's mother reported that for a two week period in January of 2008 Mr. Vlaminck was noncompliant with his medication when he relapsed on alcohol and marijuana, but that he had been on his medication and sober since that time. *Id.* Mr. Vlaminck reported hyper somnolence and weight gain of roughly 100 pounds since beginning Zyprexa. (R. 400.) Dr. Meller decreased Mr. Vlaminck's dose of Zyprexa to 15 mg. *Id.*

In May 2008, Mr. Vlaminck reported to Dr. Meller that he was three months sober and living in a sober living house. (R. 401.) Dr. Meller noted that Mr. Vlaminck reported seeing "the purple lights" sometimes and at times thinking "a sound from the train or the toilet" has meaning to him, but that he was able to recognize this as part of his illness. (R. 401.) On June 30, 2008, Mr. Vlaminck reported that he was working 34 hours per week at Divine House as overnight staff and also working in a store meat department. (R. 402.)

On September 29, 2008, Dr. Meller reported that Mr. Vlaminck had stopped taking Zyprexa

due to the significant weight gain.   As a result of stopping medication, Mr. Vlaminck had

experienced several days of significant delusions, hallucinations and what he described as receiving

constant telepathic messages.  (R. 402-403.)  Mr. Vlaminck's mother reported that the day before

he had been crying most of the day and could not communicate.  (R. 402.)  Dr. Meller restarted Mr.

Vlaminck on Zyprexa and recommended that he begin transitioning to a non-weight gaining drug,

Invega.  (R. 403.)  In October and November of 2008 Mr. Vlaminck reported doing much better and

that his psychotic symptoms were reduced on Invega.  (R. 404-405, 408.)

On November 12, 2008, Mr. Vlaminck had an Adult Rehabilitative Mental Health Services

(ARMHS) assessment with Licensed Psychologist Margaret Dwyer-Lee, Psy.D. (Tr. 386-89.)  She

assessed Mr. Vlaminck with a GAF of 40 and noted that his mental illness symptoms impair his

function in the following areas: psychiatric stability; maintaining abstinence from drugs and alcohol;

maintaining long-term employment; interpersonal skills; community integration; and avoiding

gambling.  (R. 388.)   She noted that his insight and judgment were impaired, but that his

concentration and long-term memory skills were intact.  (R. 387.)

In May 2009, Dr. Meller noted that Mr. Vlaminck had no negative side effects from Invega,

that his mood was good, and that he had very rare auditory hallucinations.  (R. 470.)  Mr. Vlaminck

reported that he was working at Divine House and had a part time job at a local country store, and

that he was finishing up online courses and planning to continue with online classes in the next term.

(R. 470.)

In September 2009, Dr. Meller wrote a letter in response to questions posed by Mr.

Vlaminck's attorney regarding his disability appeal.  (R. 479, 481.)  Dr. Meller stated that he

diagnosed Mr. Vlaminck with schizophrenia based on his experiencing paranoia and both auditory

and visual hallucinations.  (R. 479.)  Dr. Meller stated that while people with schizophrenia are at

a high risk of comorbid substance abuse diagnosis, he did not believe Mr. Vlaminck's symptoms

were caused by his consumption of alcohol or other psychoactive substances.  (R. 479.)  Dr. Meller

further stated that he did not believe Mr. Vlaminck could have done full-time, competitive work

from August 2006 through June 2008, because during that time Mr. Vlaminck continued to have

intermittent problems with psychotic symptoms, had difficulty with medication compliance, and also

had periods of hyper somnolence.  (R. 481.)

### C.     Mr. Vlaminck's Testimony

At  the  administrative  hearing  on  July  22,  2009,  Mr.  Vlaminck  testified  regarding  his

background and conditions. (R. 22-45.) Mr. Vlaminck testified that he started having hallucinations

while he was in high school.  (R. 35-36.)  He testified that while he was hospitalized in 2005 he was

put on the medication Zyprexa.  (R. 37.)  Zyprexa caused him to gain a lot of weight, up to a weight

of 245 pounds at one point.  (R. 37.)  He further testified that while taking Zyprexa he could hardly

"get up and function during the day because [he] was so tired."  (R. 38.)  Mr. Vlaminck testified that

at  some  point  he  stopped  taking  Zyprexa,  and  began  having  more  severe  symptoms  including

hallucinations and having trouble concentrating.  (R. 38.)  In August of 2006, Mr. Vlaminck was

working at a convenience store.  (R. 33.)  He testified that one day he left his job because he was

having delusional thinking, believing that customers were communicating with him telepathically

and he "couldn't handle it any more."  (R. 33.)  Mr. Vlaminck testified that he didn't work very

much from August of 2006 through the middle of 2008 because the side effects of his medication

caused him to be tired and to have trouble concentrating.  He testified that when he stopped taking

his medication, due to the side effects, his psychotic symptoms increased.  (R. 44-45.)

Mr. Vlaminck testified that he was taking the medication Invega to control his psychotic symptoms at the time of the hearing, and that the Invega helped to reduce his symptoms.  (R. 29.) At the time of the hearing, Mr. Vlaminck was working for Divine House, a residence for developmentally disabled adults, approximately 32 hours per week as a human service technician. (R. 22.)  In this role he passed out medication, prepared food, and played games with the residents. (R. 23.)  Mr. Vlaminck testified that most of his shifts were night shifts, during which he slept.  (R. 23.)  Mr. Vlaminck testified that he was also working eleven hours every other weekend at Country Store.  (R. 25.)  Mr. Vlaminck had been living with friends for the past two months, prior to which he had lived at home with his mother.  (R. 27.)

Mr. Vlaminck testified with regard to his substance abuse that he had participated in five chemical dependency treatments, either inpatient or outpatient, the most recent in 2008.  (R. 55.) He had received three DUI's, the last one in 2007.  (R. 28.)  Mr. Vlaminck testified that the last time he drank alcohol or used street drugs was February of 2008.  (R. 29-30.)

**D.      Third-Party Testimony**

Mr. Vlaminck's mother also testified at the hearing.  She testified that from August 2006 into 2008 Mr. Vlaminck slept sometimes 14 or more hours per day, and that he slept through multiple alarms.  (R. 50.)  She also testified that he needed help remembering to take medication and attend doctor appointments.  *Id.*

**E.      Medical Expert's Testimony**

Mary Louise Stevens, M.D., testified as the medical expert ("ME") at the administrative hearing.  (R. 52.)  Dr. Stevens testified that Mr. Vlaminck was diagnosed with schizophrenia, gambling addiction, and poly-substance dependence.  (R. 57-58.)  Dr. Stevens testified that all of

the symptoms of schizophrenia were in remission on Invega at the time of the hearing.  (R. 57.)  The

poly-substance dependence was not in remission completely until 2008.  (R. 58.)  Dr. Stevens opined

that Mr. Vlaminck's psychotic symptoms could be induced by the poly-substance dependence,

specifically the use of meth.  (R. 58.)

With regard to the severity of Mr. Vlaminck's symptoms under the Part B criteria, Dr.

Stevens testified that in the time since Mr. Vlaminck had been clean and sober and med compliant

on Invega, she would rate him as having only mild impairment with regard to activities of daily

living, social functioning and concentration, persistence or pace.  (R. 60.)  She noted that he had

moved out of his parents' home and was living on his own, and that he was working taking care of

developmentally delayed people.  (R. 60.)

With regard to the severity of Mr. Vlaminck's symptoms during the period from August

2006 through 2008, Dr. Stevens testified that Mr. Vlaminck would meet the listing 12.09 for poly-

substance dependence.  (R. 61.)  She stated that prior to becoming sober Mr. Vlaminck had marked

restrictions of the activities of daily living, social functioning, and concentration, persistence, and

pace.  *Id.*  She noted that he had one or two episodes of decompensation.  *Id.*

With regard to restrictions on a work setting for the period after Mr. Vlaminck became sober,

Dr. Stevens maintained that he should be restricted to "simple, repetitive, unskilled work duties with

brief and superficial contact with others" and a work environment free of controlled substances.  (R.

61.)

### F.    Vocational Expert's Testimony

Mr. Jesse Ogren testified as the vocational expert ("VE") at the administrative hearing.  (R.

69.)  The ALJ asked the VE to consider an individual of Petitioner's age, education, and work

experience who has nonexertional limitations that restrict him to tasks that are simple, repetitive, and unskilled in nature, with brief superficial contacts with others.  (R. 70.)  This individual is also limited to a work setting where alcohol and drugs are not sold or served.  (R. 70.)

The VE testified that a person with these hypothetical limitations could perform Mr. Vlaminck's past work as a car wash attendant because it is unskilled, offers brief superficial contact, and is free of controlled substances.  *Id.*  The ALJ then asked whether the VE's testimony would change if the limitation was changed from not just simple, unskilled work, but work where he would have routine, repetitive, three to four step tasks and instructions.  (R. 71.)  The VE testified that this modification of the hypothetical would not change his testimony that such an individual could work as a car wash attendant.  Id.

Upon questioning from Mr. Vlaminck's counsel, the VE testified that if an individual were absent three times per month, that would preclude competitive employment.  (R. 72.)  The VE further testified that if this individual had periods lasting for five minutes when he was "zoned out" and lost in internal thought, and such periods occurred five or six times per day, such behavior would preclude work as a car wash attendant and competitive employment entirely.  (R. 73.)

G.     The ALJ's Decision

To determine whether Mr. Vlaminck was disabled, the ALJ followed the five-step sequential process established by the Social Security Administration, outlined at 20 C.F.R. § 404.1520.  At the first step of the analysis, the ALJ determined that Mr. Vlaminck had not engaged in substantial gainful activity from August 15, 2006, the alleged onset date, through June 2008. (R. 11.) Beginning in June 2008 and continuing through the time of the ALJ's decision, Mr. Vlaminck worked at a substantial gainful level.  *Id.*

The second step in the sequential evaluation is to determine whether the claimant had a severe impairment, defined as a medically determinable impairment or combination of impairments that significantly limits the individual's physical or mental ability to meet the basic demands of work activity.  20 C.F.R. § 404.1520(c).  The ALJ found that Mr. Vlaminck had the following severe impairments: a gambling addiction; a history of a substance addiction disorder; schizophrenia; depression, in partial remission; and anxiety, in partial remission.  (R. 12.)  The ALJ noted that while the record references a number of physical impairments, there was no documentation of functional limitations of a twelve month duration resulting from any physical impairment.  (R. 12.)

The third step in the analysis requires a comparison of the claimant's severe impairments with the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ concluded that Mr. Vlaminck's impairments, including the substance use disorder, meet Section 12.09 (substance abuse disorder) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 12.)  In reaching this determination, the ALJ considered the "paragraph B" criteria.  *Id.*  In order to satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or, repeated episodes of decompensation, each of extended duration.  The ALJ found that as a result of his substance addiction disorder, Mr. Vlaminck had only moderate restrictions of daily living.  (R. 12.)  However, he found that Mr. Vlaminck had marked difficulties in social functioning and marked difficulties with regard to concentration, persistence or pace.  (R. 12.)  The ALJ also found that Mr. Vlaminck had experienced one to two episodes of decompensation consistent with findings of hallucinations and delusions, residential treatment placements, and mental health and chemical dependency treatment programs.  (R. 12.)  The ALJ

13

noted that he gave significant weight to the opinion of Dr. Stevens, the neutral medical expert, as it was well supported by the weight of the evidence of record. (R. 12.) The ALJ's analysis did not end here, because of the evidence of alcohol and drug addiction.

The Social Security Act provides that an individual shall not be considered disabled if alcoholism or drug addiction would be a "contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether an individual would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535.

The ALJ determined that if Mr. Vlaminck stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and Mr. Vlaminck would therefore continue to have a severe impairment. (R. 12.) However, the ALJ determined that if Mr. Vlaminck stopped the substance use, the remaining impairments would not meet or medically equal the criteria of listings 12.03 (schizophrenic), 12.04 (affective disorders), or 12.06 (anxiety related disorders). (R. 12-13.) The ALJ found that if the substance abuse was stopped, Mr. Vlaminck would only have mild restrictions of daily living. The ALJ noted that Mr. Vlaminck cares for his personal hygiene and is responsible for food preparation in his current position as a residential aide. (R. 13.) The ALJ found that while maintaining sobriety Mr. Vlaminck has moderate difficulties with social functioning, noting that he relates appropriately to examining and treating sources, attends AA and GA meetings, and maintains stable interpersonal relationships. *Id.* The ALJ found that when maintaining sobriety, Mr. Vlaminck would have moderate difficulties with concentration, persistence or pace. *Id.* The ALJ noted evidence that when Mr. Vlaminck was

14

sober, the frequency and severity of hallucinations improved allowing him to attend classes and complete online coursework, and that he returned to work at a substantial gainful level assisting developmentally disabled adults with medications, maintaining order, and playing games.  *Id.* Finally, the ALJ noted that Mr. Vlaminck had experienced no periods of decompensation when maintaining sobriety.  *Id.*

At steps four and five in the evaluative process, the ALJ must determine whether the claimant  has a residual functional capacity ("RFC") that allows him to perform his past relevant work, or any other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(f)-(g).  The ALJ found that Mr. Vlaminck, when maintaining sobriety, could perform a full range of work at all exertional levels, with the following nonexertional limitations: simple, repetitive, unskilled work duties; brief and superficial contact with others; and a work environment free of alcohol and drugs.  (R. 13.)   The ALJ determined that Mr. Vlaminck's RFC, while maintaining sobriety, would allow him to perform his past relevant work as a car wash attendant. (R. 15.)

Because the ALJ found that Mr. Vlaminck would not be disabled if he stopped the use of drugs and alcohol, the ALJ found that substance use disorders were a contributing factor material to the determination of disability.  (R. 16.)  The ALJ therefore held that Mr. Vlaminck was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his decision.  *Id.*

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C.

§ 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989).  Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)).  In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight.  *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision.  *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996).  "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently."  *Roberts v. Apfel*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Id.*  Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo.  *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).  The Court must "defer heavily to the findings and conclusions of the SSA."  *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV.  CONCLUSIONS OF LAW

### A.  Applicable Law

Disability is defined as "the inability to do *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) (emphasis added).  In making a disability determination, the ALJ must analyze a sequential evaluation process which applies to both physical and mental disorders. Title 20, Section 404.1520 of the Code of Federal Regulations outlines the five-step sequential process used by the ALJ to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.

The disability determination requires a step-by-step analysis.  *See* 20 C.F.R. § 404.1520(a). At the first step, the ALJ must consider the claimant's work history.  20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ must consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  At the third step, the ALJ must consider whether the claimant has an impairment or impairments that meet or equal one of the listings in Appendix 1 to Subpart P of the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's RFC and the claimant's past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ determines that the claimant can still perform his or her past relevant work, the ALJ will find that the claimant is not disabled.  If the claimant cannot perform his or her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy."  *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

Where a claimant has a history of substance abuse, an additional analysis is required. Generally, substance abuse precludes an award of benefits for being disabled if such abuse is a "contributing factor" to a determination of disability. 42 U.S.C. § 423(d)(2)(C).  If a claimant is found to be disabled and there is medical evidence of drug addiction or alcoholism, the Commissioner must then determine whether that substance abuse is a contributing factor material to the finding of disability. 20 C.F.R. § 404.1535(a).  Drug addiction or alcoholism is such a "contributing factor" under the statute if the claimant would not still be found "disabled" if he stopped using drugs or alcohol. *Id.* § 404.1535(b). The claimant bears the burden of proving that such drug addiction or alcoholism was not a contributing factor.  *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir.2003).

The issue on appeal is whether Mr. Vlaminck is entitled to disability benefits for the period of August 15, 2006 to June 2008.  Mr. Vlaminck argues that substantial evidence does not support the ALJ's determination that a substance use disorder is a contributing factor material to the determination of his disability.  Mr. Vlaminck argues that the ALJ erred when he: (1) determined that Mr. Vlaminck's mental illness symptoms were caused by substance abuse,  (2) improperly weighed the medical evidence, and (3) found Mr. Vlaminck's testimony not to be fully credible.

**B.    Substantial Evidence Supports the ALJ's Determination that Substance Abuse was a Material Factor Contributing to Mr. Vlaminck's Disability**.

Mr. Vlaminck makes two related arguments with regard to the ALJ's evaluation of his substance abuse and mental illness: 1) that the ALJ made an improper determination that his mental illness symptoms were caused by substance abuse, and 2) that substantial evidence does not support the ALJ's determination that substance abuse was a material factor contributing to Mr. Vlaminck's disability.

18

**1.      The ALJ did not find that substance abuse cause Mr. Vlaminck's mental illness.**

Plaintiff first argues that the ALJ  erred by determining that his mental illness symptoms were caused by substance abuse, rather than schizophrenia.  Mr. Vlaminck argues that "the ALJ does not seem to realize that his ultimate decision rests on a determination of the etiology of the Plaintiff's mental impairments and that he has appointed himself psychiatrist-in-chief in making that medical determination."  (Pl.'s Mem. at 4.)

The Court finds that Mr. Vlaminck misreads the ALJ's opinion to the extent he argues that the ALJ found that his psychotic symptoms were caused by substance abuse.  While the medical expert at the hearing testified that it was possible Mr. Vlaminck's psychotic symptoms were caused not by schizophrenia but by years of drug abuse, the ALJ did not adopt this opinion.   The ALJ found that Mr. Vlaminck had severe impairments of schizophrenia and depression. (R. 12.) Further, the ALJ  explicitly stated that he made "no determination as to whether the claimant's impairments are caused by substance abuse but the record clearly establishes that symptoms and signs of mental illness improved and stabilized when the claimant maintains sobriety/abstinence" and that the claimant "has the ability to use prescriptive medications to control the severity of his symptoms." (R. 14.)  While the ALJ discussed the interrelation between substance abuse and mental illness, as he was required to do by the regulations, the ALJ did not find, as Mr. Vlaminck argues, that his psychotic symptoms were caused by substance abuse.

**2.      Substantial evidence supports the ALJ's determination that substance abuse was a material factor contributing to Mr. Vlaminck's disability.**

Mr. Vlaminck next argues more broadly that substantial evidence does not support the ALJ's determination that substance abuse was a material factor in the determination that he was disabled. The claimant bears the burden of proving that drug addiction or alcoholism was not a contributing

19

factor in the finding of disability. *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir.2003). The "key factor" in determining whether drug addiction or alcoholism is material to a determination of disability is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

The determination of whether a claimant would be disabled if he or she stopped drinking and substance abuse, "is, of course, simpler if the claimant actually has stopped." *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). The Eighth Circuit has held that an ALJ may rely on evidence that a claimant has improved functioning and is able to work during periods of sobriety in making the determination that substance abuse is a material factor in the finding of disability. *Vester v. Barnhart*, 416 F.3d 886, 891 (8th cir. 2005); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("The evidence reflected that when Estes reduced her alcohol use she was able to conduct daily activities and perform certain jobs, confirming the conclusion that Estes's condition improved during periods of sobriety."). In *Vester*, the Eighth Circuit went so far as to express doubt that the ALJ's finding on this question must be based on medical evidence at all. 416 F.3d at 891. The court held that "if an ALJ is presented with evidence that a claimant has demonstrated the ability to work during periods of sobriety, it seems within the ken of the ALJ to make a factual finding that the claimant is able to work when she is not abusing alcohol." *Id.*

In this case, the ALJ relied on evidence that Mr. Vlaminck was able to work when sober. The ALJ noted Mr. Vlaminck's testimony that he achieved sobriety from alcohol and drugs in February of 2008. (R. 14, 29-30.) The extent of Mr. Vlaminck's substance abuse problems are well documented in the record. (*See* R. 286, 334, 348, 393.) The evidence showed that four months after achieving sobriety, in June of 2008, Mr. Vlaminck began working at a substantial gainful level as

an aide at Divine House, a residential facility for disabled adults.  (R. 23-34.)   Mr. Vlaminck was

able to maintain that position for over a year.  *Id.*  At the time of the hearing in July of 2009, Mr.

Vlaminck was working at Divine House 32 hours per week, and as a clerk at Country Store for 11

hours every other weekend.  (R. 24-25.)  The ALJ also noted that since achieving sobriety, Mr.

Vlaminck was able to attend classes and complete online course work.  (R. 13, 15.)  Under Eighth

Circuit caselaw, the ALJ was allowed to rely on this evidence that when sober Mr. Vlaminck was

able work at a substantial gainful level as evidence that substance abuse was a material factor in the

determination of Mr. Vlaminck's disability.

In making this determination, the ALJ also relied on evidence that Mr. Vlaminck's psychotic

symptoms were well controlled by medication.  (R. 14.)  This finding is supported by substantial

evidence in the record.  While Mr. Vlaminck reported intermittent hallucinations while on anti-

psychotic medication, these were infrequent, and his treating physician Dr. Meller noted that he was

"able to recognize them as part of his illness."  (R. 338, 392, 398, 401, 471.)  Overall, the Court

finds that the ALJ's determination that substance abuse was a material factor contributing to Mr.

Vlaminck's disability was supported by substantial evidence.

Mr. Vlaminck argues that the ALJ ignored substantial evidence that his  poor functioning

prior to June 2008 was not due to substance abuse, but rather to the side effects of the medication

Zyprexa.  (Pl.'s Mem. at 4-5.)  Mr. Vlaminck took the anti-psychotic Zyprexa from August 2006

through October 2008, when he switched to Invega, a different anti-psychotic medication.  Mr.

Vlaminck points to notes from his treating physician, Dr. Meller, noting sedation and hyper

somnolence as side effects of Zyrexa.  (R. 395, 396, 400.)   Mr. Vlaminck argues that this is

consistent with his own testimony at the hearing that when he was on Zyprexa he could hardly "get

up and function during the day because [he] was so tired." (R. 37, 38.) His mother also testified that while taking Zyprexa, Mr. Vlaminck slept excessively and had trouble waking. (R. 50.)

The Court agrees with Mr. Vlaminck that there is evidence in the record that Mr. Vlaminck experienced significant side effects to Zyprexa, and that these side effects support a finding that Mr. Vlaminck was disabled during the 2006 to 2008 period independent of his substance abuse. However, "as long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000). As discussed above, the evidence that Mr. Vlaminck was able to work at a substantial gainful level when sober, coupled with evidence that medication effectively treated his psychotic symptoms, constitutes substantial evidence supporting the ALJ's decision. A reasonable person considering the record as a whole could reach the conclusion adopted by the ALJ, therefore the ALJ's decision should be upheld.

### C.    The ALJ properly weighed the medical opinion evidence.

Mr. Vlaminck argues that the ALJ improperly weighed the medical opinion evidence by giving no weight to the opinion of his treating physician and significant weight to the opinions of the medical expert and state agency medical consultant. (Pl.'s Mem. at 5, 10.)

Generally, a treating physician's opinion is entitled to substantial weight. 20 C.F.R. § 404.1527(d)(2). If it is found "that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). However, an opinion from a treating

source that is inconsistent with other substantial evidence on the medical record need not be afforded controlling weight.  SSR Ruling 96-2P, 1996 WL 374188, at *1 (July 1996).  The statements of a treating physician may be discounted if they are inconsistent with the opinions of other physicians or the overall record.  *Teague v. Astrue,* 638 F.3d 611, 615 (8th Cir. 2011).  "It is the ALJ's function to resolve conflicts among various treating and examining physicians."  *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995.)

The ALJ acknowledges that Dr. Meller is a treating source, and states that he has "considered but not given controlling weight" to his opinion.  (R. 15.)  Dr. Meller opined in October of 2007, "It does not appear likely that this patient will be able to pursue a financially viable occupation any time in the foreseeable future."  (R. 391.)  Then, in a letter written and submitted after the hearing but prior to the issuance of the ALJ's decision, Dr. Meller opined that Mr. Vlaminck could not have done full-time competitive work during the period from August 2006 until June 2008 because "he continued to have intermittent problems with psychotic symptoms, such as hallucinations and delusions[, he] had some difficulties with medical compliance and also periods of hyper somnolence."  (R. 481.)

The ALJ did not give controlling weight to this opinion because he found that "when the claimant maintained [sobriety]/abstinence" the opinion was "not consistent with other substantial evidence of record, as discussed in more detail in the text of this decision."  (R. 15.)  The Court agrees that there is substantial evidence in the record that conflicts with Dr. Meller's assessment that Mr. Vlaminck could not work.  In November of 2007, during the period in which Dr. Meller opined that he could not work, Mr. Vlaminck was working 20-30 hours per week as a cashier and taking three college courses, in which he reported receiving "As and Bs."  (R. 456, 462, 460.)  Once Mr.

Vlaminck achieved sobriety, he was able to work full time, at a residential facility for disabled adults and a supermarket.  (R. 446.)  In light of this evidence, and the contradictory opinions of the consulting physicians discussed below, it was reasonable for the ALJ to discount Dr. Meller's opinion that Mr. Vlaminck was incapable of working full time.

The ALJ gave significant weight to the opinions of state agency psychologist Dr. Conroe and medical expert Dr. Stevens.  (R. 15.)  While the opinions of non-examining physicians do not on their own constitute substantial evidence, an ALJ is required to consider such opinions, and the weight given to such opinions shall depend "on the degree to which they provide supporting explanations for their opinions."  20 C.F.R. § 416.927(d)(3).  Both Dr. Stevens and Dr. Conroe opined that when sober, Mr. Vlaminck could work so long as he was limited to brief and superficial contact with coworkers and the public and to only routine, repetitive unskilled work.  (R. 61, 384.) The ALJ found these opinions to be generally consistent with that of Mr. Carroll, a licensed psychologist who examined Mr. Vlaminck.  (R. 15.)  Mr. Carroll opined that Mr. Vlaminck had the capacity to understand and follow instructions in an entry-level work position and relate to fellow workers, though he "might have some inability to persist in carrying out tasks."  (R. 302.) Additionally, the ALJ also found that the opinions of Dr. Conroe and Dr. Stevens were consistent with Mr. Vlaminck's limitations as reflected elsewhere in the evidence and were supported by the overall evidence in the record.  (R. 15.)  The Court finds that both Dr. Conroe and Dr. Stevens supported their opinions with evidence from Mr. Vlaminck's treatment records regarding his substance abuse, his treatment, and his daily activities and work.  The Court finds that because the opinions of Dr. Stevens and Dr. Conroe are consistent with the overall evidence of record, the ALJ did not err in granting these opinions significant weight.

**D.     The ALJ gave proper consideration to Mr. Vlaminck's credibility.**

Finally, Mr. Vlaminck argues that the ALJ did not properly support his determination that Mr. Vlaminck's testimony regarding the intensity, persistence and limiting effects of his symptoms was not fully credible.  (Pl.'s Mem. at 4.)  The ALJ found Mr. Vlaminck's allegations that he could not perform any gainful activity not to be fully credible.  (R. 14-15.)

To be legally sufficient, the ALJ must make an express credibility determination and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2005.)  In evaluating "the degree or severity of subjective complaints," the ALJ must "give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians."  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). With these sources in mind, the ALJ should consider such matters as: "1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions."  *Id.* "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id.*  Not every factor need be discussed by the ALJ, and as long as the ALJ "gives a good reason" for discrediting a claimant's credibility, "[the court] will defer to its judgment." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

Here, the ALJ noted that Mr. Vlaminck's claims that he could not work were not consistent with his activities of daily living when he was sober.  (R. 15.)  The ALJ noted that Mr. Vlaminck remained active throughout the day, cared for his personal hygiene, took college classes, and worked at a substantial gainful levels for much of the relevant time.  (R. 15.)  Substantial evidence in the

record supports the ALJ's determination that Mr. Vlaminck's daily activities were inconsistent with his testimony that he could not work.

The ALJ also considered Mr. Vlaminck's treatment history, and evidence that when he maintained sobriety he had the ability to use prescription medication to control the severity of his symptoms.  (R. 14.)  Throughout the period at issue, Mr. Vlaminck reported to Dr. Meller that his symptoms were well controlled with medication.  (*See* R. R. 338, 392, 398, 401, 471.)  The Court finds that substantial evidence supports the ALJ's determination that Mr. Vlaminck's testimony was not credible to the extent he asserted he could not work at a substantial gainful level when maintaining sobriety.[2]

In conclusion, because the ALJ's determination is supported by substantial evidence in the record as a whole, the Commissioner's decision to deny Mr. Vlaminck's claim for disability benefits should be affirmed.

## V.  CONCLUSION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (ECF No. 10) be **DENIED**;

2.    Defendant's Motion for Summary Judgment (ECF No. 16) be **GRANTED**;

---

[2]Mr. Vlaminck also mentions that the ALJ failed to mention the testimony of Mr. Vlaminck's mother. Mr. Vlaminck's mother's testimony focused mainly on his hyper somnolence during the 2006 through 2008 period.  (R. 50.)  While the ALJ did not specifically address his mother's testimony, the ALJ did give reasons why the same allegations, made by Mr. Vlaminck himself, did not support a finding of disability.  In cases where third-party evidence is the same as evidence that the ALJ rejected for reasons stated in the opinion, the Eighth Circuit has declined to remand for "arguable deficiency in opinion-writing technique" that had no effect on the outcome of the case. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).  While the ALJ should have discussed and explicitly found that Mr. Vlaminck's mother's testimony did not support a finding of disability, the Court does not find that this is an error requiring remand.

3.      The Commissioner's decision be **AFFIRMED** and the case **DISMISSED WITH**

**PREJUDICE**; and

4.      **JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: January 24, 2012                 *s/ Franklin L. Noel*
                                        FRANKLIN L. NOEL
                                        United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 7, 2012**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.